IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANLEY BOCLAIR, #A60451, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 21-cv-0289-SPM |
| ) | |
| ANTHONY WILLS, ) | |
| MOHAMMAD SIDDIQUI, ) | |
| ANGELA CRAIN, KIM MARTIN, ) | |
| HEATHER PRICE, and ) | |
| ROB JEFFREYS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiff Stanley Boclair, who is an inmate at Menard Correctional Center ("Menard"), brought this civil action pursuant to 42 U.S.C. § 1983 claiming that Defendants denied him medical care for a painful rash that started on his genitals and eventually affected much of his body. He further claims that the Defendants' denial of care was in retaliation for a previous lawsuit. (Doc. 1). Defendant Siddiqui filed a Motion for Summary Judgment claiming Plaintiff failed to exhaust his administrative remedies (Doc. 36). Defendants Crain, Jeffreys, Martin, Price, and Wills (hereinafter "the IDOC Defendants") similarly filed a motion raising failure to exhaust (Doc. 65). Plaintiff responded to both motions, respectively, at Docs. 53 and 74. For the reasons below, Siddiqui's motion will be granted, and the IDOC Defendants' motion will be denied at this time.

### BACKGROUND

Plaintiff filed his Complaint on March 15, 2021. (Doc. 1). He sought treatment on October 6, 2020 from Dr. Siddiqui for a genital rash, but Siddiqui did not treat the problem. Plaintiff attributes Siddiqui's refusal to treat him to retaliation on account of Plaintiff's lawsuit against

1

several Menard medical providers in *Boclair v. Baldwin, et al.*, Case No. 18-cv-2084-NJR-GCS (S.D. Ill. filed Nov. 16, 2018).[1] Plaintiff continued to seek treatment over the ensuing months while the rash spread. His mental health caregivers and attorney relayed his concerns to Defendant Crain, who took no action. Plaintiff submitted grievances to Defendants Wills, Price, and Jeffreys; and requested treatment in person to Wills and Martin, to no avail. After multiple medical requests, Plaintiff was finally called in for treatment on March 12, 2021. Upon initial review, the Court allowed Plaintiff to proceed on the following claims:

> Count 1: First Amendment retaliation claim against Dr. Siddiqui for denying Plaintiff medical care for a painful skin condition on October 6, 2020, in retaliation for Plaintiff having filed a lawsuit against Defendant Crain and other medical staff.
>
> Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Siddiqui for denying Plaintiff medical care for a painful skin condition on October 6, 2020.
>
> Count 3: First Amendment retaliation claim against Wills, Crain, Martin, and Price, for denying Plaintiff medical care for a painful skin condition between December 23, 2020, and March 2021, in retaliation for Plaintiff having filed a lawsuit against Defendant Crain and other medical staff.
>
> Count 4: Eighth Amendment deliberate indifference to serious medical needs claim against Wills, Crain, Martin, Price, and Jeffreys for denying Plaintiff medical care for a painful skin condition between December 23, 2020, and March 2021.

(Doc. 16, pp. 3-6).

Siddiqui identifies one relevant grievance (No. 4-2-21) filed by Plaintiff related to the claims in Counts 1 and 2. (Doc. 37-3, p. 52). Plaintiff submitted this grievance on January 31, 2021, complaining that he consulted Siddiqui on October 6, 2020 about penile pain and Siddiqui did nothing. Plaintiff stated as of the time he filed the grievance, the itch had spread over his entire

---

[1] That case was closed in late 2022 after a partial settlement.

body leaving sores and scars. *Id.* It was deemed an emergency, but the Grievance Officer rejected the grievance because Plaintiff did not submit it "within 60 days after the discovery of the incident." (Doc. 37-3, p. 51). Plaintiff appealed to the Administrative Review Board ("ARB"), which rejected it as untimely. (Doc. 37-3, p. 50). Based on this sequence of events, Siddiqui argues that Plaintiff failed to properly exhaust his claims.

Plaintiff explains the timing of Grievance No. 4-2-21 by noting his mental health provider (who is an M.D.) reviewed his medical records on January 14, 2021 and assessed that he had a urinary tract fungus. (Doc. 53, pp. 1-2, 4). At the time Plaintiff saw Siddiqui on October 6, 2020, he "had no medical knowledge to rival" Siddiqui's statement that his complaint was "nothing." (Doc. 53, p. 4). Plaintiff further claims to have submitted Grievance No. 154-1-21 on January 19, 2021 over the failure to act on a December 23, 2020 referral for treatment of his rash and sores, and asserts that grievance was fully exhausted. (Doc. 53, pp. 2, 12-14). Plaintiff references No. 154-1-21 in another grievance dated February 14, 2021, stating he submitted it to the counselor on January 24, 2021, but never got a response. (Doc. 53, pp. 12-13).

The IDOC Defendants' motion notes that Grievance No. 4-2-21 complained only about Plaintiff's October 2020 visit to Siddiqui and did not include any content regarding the other Defendants' actions or inactions, thus it cannot have exhausted the claims against them. They argue that Grievance No. 154-1-21 was not fully exhausted because the grievance records do not show that Plaintiff ever submitted it for normal grievance review after it was deemed not to be an emergency. (Doc. 66, pp. 7-8; Doc. 66-3, p. 2; Doc. 66-5, pp. 7-8).

Plaintiff disputes that he failed to exhaust Grievance No. 154-1-21, asserting that on January 24, 2021, he placed it in the locked metal box that was brought to his gallery to collect grievances. (Doc. 74, pp. 5, 34). He never got a response to that grievance despite writing to

3

Jeffreys and Wills regarding the disappearance of that complaint and other grievances. (Doc. 74, pp. 5-7, 34). Plaintiff argues this demonstrates the grievance process was unavailable to him. He further asserts that the failure to treat his medical needs amounted to a continuing violation through December 2021, and that his emergency Grievance No. 97-12-21 (filed December 5, 2021) served to exhaust this issue. (Doc. 74, pp. 4-5, 17-18).

## LEGAL STANDARDS

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion

procedures). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). If an inmate is unsatisfied with the outcome at the facility, he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures do allow for an inmate to file an emergency grievance; to do so, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a). After such a determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

## ANALYSIS

### I. Counts 1 and 2 – Dr. Siddiqui

For the reasons discussed below, the Court concludes that it is not necessary to hold a hearing on Siddiqui's motion for summary judgment.

#### A. Grievance No. 4-2-21 – January 31, 2021

Plaintiff asserts that this grievance was a timely complaint about Siddiqui's lack of

treatment at Plaintiff's October 6, 2020, encounter because Plaintiff first became aware that he had a urinary fungus on January 14, 2021 and he filed within 60 days of that date. But it is undisputed that Plaintiff sought treatment from Siddiqui on October 6, 2020 for the symptoms of genital pain and itch that he experienced at that time, Siddiqui dismissed Plaintiff's concern without offering treatment, and Plaintiff did not have any later visit with Siddiqui. Therefore, to be timely, Plaintiff's grievance over Siddiqui's inaction in the face of Plaintiff's symptoms must have been filed within 60 days of October 6, 2020. Plaintiff's later discovery of a possible diagnosis for his symptoms is of no consequence because Plaintiff knew he had the symptoms when he consulted Siddiqui. *See Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (the statute of limitations begins to run at the time an injury is discovered). Grievance No. 4-2-21 against Siddiqui was untimely according to the prison grievance procedure, thus Plaintiff failed to properly exhaust it.

### B. Grievance No. 154-1-21 – filed January 19, 2021

Plaintiff appears to be arguing that his attempt to exhaust this grievance was thwarted when he got no response from the counselor after submitting it on January 24, 2021. Plaintiff originally filed that grievance as an emergency, but on January 22, 2021, it was deemed a non-emergency and returned to him. (Doc. 37-1, p. 8). The proper procedure would have been to submit the grievance through normal non-emergency channels, which Plaintiff asserts he did. Even taking Plaintiff's claim as true, however, his original filing of this grievance on January 19, 2021, was still more than 60 days after his October 6, 2020 visit to Siddiqui seeking treatment. Therefore, it also was untimely and cannot serve to exhaust Plaintiff's claims in Counts 1 and 2.

Accordingly, Defendant Siddiqui's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 36) will be granted.

## II. Counts 3 and 4 – IDOC Defendants

### A. Grievance No. 4-2-21 – January 31, 2021

The Court agrees with Defendants that this grievance could not serve to exhaust Plaintiff's claims against Defendants Crain, Jeffreys, Martin, Price, or Wills because it only complained about Siddiqui's lack of treatment on October 6, 2020 and failed to mention any other medical providers. (Doc. 66-2, p. 33).

### B. Grievance No. 154-1-21 – filed January 19, 2021

This emergency grievance recited that a medical referral had been made on December 23, 2020 for Plaintiff to obtain treatment for his "persistent rash that has been ravishing [Plaintiff's] body leaving scars since early November." (Doc. 53, p 14; Doc. 74, p. 22). A provider attempted treatment with anti-fungus cream but Plaintiff continued to have itching, pain, and scars over his entire body. *Id.* Further, "Jane Doe Unknown HCU Staff are denying and delaying medical treatment because of lawsuits against them." *Id.* As an initial matter, the Court finds the content of this grievance sufficient to present Plaintiff's claims against the IDOC Defendants in Counts 3 and 4.

The emergency grievance was logged as received on January 20, 2021; it was deemed non-emergency and returned to Plaintiff on January 22, 2021. (Doc. 66-5, p. 8). The IDOC's Cumulative Counseling Summary does not reflect any resubmission of the grievance for regular consideration, and Defendant Price recorded a "Kite response" on February 24, 2021 informing Plaintiff that he never resubmitted Grievance No. 154-1-21 as a non-emergency. (Doc. 66-5, p. 7).

Plaintiff's Affidavit[2] affirms that he did resubmit Grievance No. 154-1-21 for regular

---

[2] A party may oppose summary judgment with an affidavit if it is based on personal knowledge. FED. R. CIV. P. 56(c)(4). Plaintiff's affidavit in support of summary judgment is based on his personal knowledge, and he attested to its accuracy under penalty of perjury in accordance with 28 U.S.C. § 1746. (Doc. 74, p. 35).

consideration on January 24, 2021 by using the same method he employed when he sent it as an emergency grievance – he placed it in the locked box brought to his cell by an officer. (Doc. 74, pp. 34; *see also* Doc. 74, p. 5-6, 23). He believes that Price withheld or destroyed it, thus thwarting him from using the grievance process to exhaust the matter. Plaintiff notes that since 2011, he has kept a handwritten log to document each grievance he has filed and appealed and the outcome in each case, and he includes a copy. (Doc. 74, pp. 1, 8-16, 34). He recorded submitting Grievance No. 154-1-21 as an emergency, and then resubmitting it to Price on January 24, 2021, but his log shows no response after that. (Doc. 74, p. 14).

Plaintiff followed up on the matter by submitting a grievance dated January 31, 2021, complaining that Price withheld/destroyed grievance No. 154-1-21 submitted on January 24, 2021. (Doc. 74, pp. 6, 24). Plaintiff also submitted a February 14, 2021 grievance directed to "Director Jeffreys/ARB" complaining that six grievances, including No. 154-1-21, were withheld or destroyed after he submitted them. (Doc. 74, pp. 6, 25-26). That grievance was stamped as received by the ARB on February 19, 2021 and was rejected because the original grievances and responses were not attached. (Doc. 74, p. 27).

Plaintiff's assertion that he resubmitted Grievance No. 154-1-21 to be considered as a non-emergency complaint is similar to the circumstances in *Dole*, where the Seventh Circuit found that an inmate had done all he could to exhaust administrative remedies by placing a timely appeal to the ARB in his chuckhole to be mailed. *Dole v. Chandler*, 438 F.3d 804, 810-11 (7th Cir. 2006). In *Dole*, the inmate's mail to the ARB was apparently lost, but the Court found that the error was a misstep by the prison system, not the inmate, so the inmate could not be faulted for a failure to exhaust. If Plaintiff indeed resubmitted the grievance, its loss would appear to be the fault of the prison system rather than an error by Plaintiff.

These disputed facts about whether Plaintiff took all the necessary steps to exhaust Grievance No. 154-1-21 makes summary judgment for the IDOC Defendants inappropriate. *See Smallwood v. Williams*, 59 F.4th 306, 314-15 (7th Cir. 2023) (court must resolve contested facts on availability of grievance process in a *Pavey* hearing).

Based on the record before the Court, the IDOC Defendants' motion must be denied. Resolving the question of whether Plaintiff procedurally exhausted Grievance No. 154-1-21 will require a hearing as explained in *Pavey*, 544 F.3d 739. If the IDOC Defendants want to continue to pursue the affirmative defense of failure to exhaust administrative remedies, they must request a *Pavey* hearing.

If a hearing is requested, the material factual issue the Court would consider is:

1) Did Plaintiff timely resubmit Grievance No. 154-1-21 for consideration as a non-emergency after it was returned to him on January 22, 2021?

The parties will be expected to present evidence only on this issue, if a *Pavey* hearing is held.

If the IDOC Defendants do not request a *Pavey* hearing, a merits discovery schedule will be set, or the parties may request that the case be referred for a settlement conference or mediation.

As a final matter, Plaintiff's claim that Grievance No. 97-12-21 served to exhaust his "continuing violation" claim against Defendants for failure to treat his medical issues is unavailing. (Doc. 74, pp. 1, 4, 34). Plaintiff did not submit this grievance until December 5, 2021, long after he filed this lawsuit in March 2021. (Doc. 74, pp. 17-19). Exhaustion of the grievance process must be accomplished *before* suit is filed; a later-filed grievance cannot suffice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).

**DISPOSITION**

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 36) filed by Defendant Siddiqui is **GRANTED**. Counts

1 and 2 and Defendant Siddiqui are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment on Exhaustion of Administrative Remedies filed by Defendants Crain, Jeffreys, Martin, Price, and Wills (Doc. 65) is **DENIED**. These Defendants must file a notice within fourteen days (14) of this Order either withdrawing the affirmative defense of exhaustion or requesting a *Pavey* hearing.

**IT IS SO ORDERED.**

DATED:  February 24, 2023

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**

### Notice to Plaintiff

This Order is an initial decision that you have presented enough evidence to refute the IDOC Defendants' arguments (Docs. 65, 66) about the exhaustion of administrative remedies for your claims in this lawsuit. The defendants now have the choice to withdraw their exhaustion argument, or to ask for a hearing to give more evidence about this issue. If the defendants withdraw the defense, you will get a scheduling order for next steps on the merits of your claims. If the defendants ask for a hearing, you will get an order that will explain next steps to prepare for the hearing. Any hearing will be limited strictly to the "disputes of material fact" specifically identified in this Order. You will not need to present evidence on anything other than what is specifically identified. If a hearing is scheduled, you will be allowed to present evidence and testimony on your own behalf. Details about a future hearing will be provided by future order if one is scheduled. You do not need to do anything now. The Defendants have 14 days to file a motion about what they want to do. You will get a copy of that motion, and you will get further instructions once the Defendants have filed their motion. Please be aware that there can be delays in the mailing of copies, so you should wait at least 30 days before asking for the status of this matter.