IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STANLEY BOCLAIR, #A60451, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 21-cv-0289-SPM |
| | ) |
| ANTHONY WILLS, | ) |
| ANGELA CRAIN, KIM MARTIN, | ) |
| HEATHER PRICE, and | ) |
| ROB JEFFREYS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter is before the Court on the Motion for Hearing (Doc. 76) filed by Defendants Martin, Price, Jeffreys, Crain, and Wills pursuant to the Court's Order of February 24, 2023 (Doc. 75).[1] These remaining Defendants are all employees of the Illinois Department of Corrections ("IDOC"). The Court denied Defendants' Motion for Summary Judgment on the issue of exhaustion of administrative remedies (Doc. 65),[2] determined that a *Pavey* hearing would be necessary to resolve disputed facts, and allowed Defendants to request such a hearing.[3]

Plaintiff Stanley Boclair is an inmate at Menard Correctional Center ("Menard"). His civil rights suit under 42 U.S.C. § 1983 asserts that Defendants denied him medical care for a painful rash that started on his genitals and eventually affected much of his body. He further claims that the denial of care was in retaliation for a previous lawsuit. (Doc. 1).

The Court held an evidentiary hearing on the issue of exhaustion on May 15, 2023.

---

[1] The Court granted Mohammed Siddiqui's Motion for Summary Judgment on the exhaustion issue and dismissed him from the action (Doc. 75).
[2] Plaintiff responded to the summary judgment motion at Doc. 74.
[3] *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

1

For the reasons set forth below, the Court finds that Defendants Martin, Price, Jeffreys, Crain, and Wills are not entitled to summary judgment on the issue of exhaustion, and Plaintiff may proceed with his claims.

## BACKGROUND

Plaintiff filed his Complaint on March 15, 2021. (Doc. 1). He sought treatment on October 6, 2020 from now-dismissed Defendant Dr. Siddiqui for a genital rash, but Siddiqui did not treat the problem. Plaintiff continued to seek treatment over the ensuing months while the rash spread. His mental health caregivers and attorney relayed his concerns to Defendant Crain, who took no action. Plaintiff submitted grievances to Defendants Wills, Price, and Jeffreys; and requested treatment in person to Wills and Martin, to no avail. After multiple medical requests, Plaintiff was finally called in for treatment on March 12, 2021. Plaintiff claims that Defendants refused to treat him in retaliation for Plaintiff's lawsuit against several Menard medical providers in *Boclair v. Baldwin, et al.*, Case No. 18-cv-2084-NJR-GCS (S.D. Ill. filed Nov. 16, 2018).[4]

Upon initial review, the Court allowed Plaintiff to proceed on four claims. Counts 1 and 2 against Defendant Siddiqui were dismissed on February 24, 2023 for Plaintiff's failure to exhaust administrative remedies (Doc. 75). The following claims remain in this action:

> Count 3: First Amendment retaliation claim against Wills, Crain, Martin, and Price, for denying Plaintiff medical care for a painful skin condition between December 23, 2020, and March 2021, in retaliation for Plaintiff having filed a lawsuit against Defendant Crain and other medical staff.
>
> Count 4: Eighth Amendment deliberate indifference to serious medical needs claim against Wills, Crain, Martin, Price, and Jeffreys for denying Plaintiff medical care for a painful skin condition between December 23, 2020, and March 2021.

(Doc. 16, pp. 3-6; Doc. 75).

---

[4] That case was closed in late 2022 after a partial settlement.

The Court examined two grievances filed by Plaintiff regarding the medical issues that gave rise to his claims. The first, Grievance No. 4-2-21, submitted January 31, 2021, complained only about Siddiqui's conduct. The Court concluded it was untimely and not properly exhausted as to Siddiqui, and further found that Grievance No 4-2-21 did not serve to exhaust Plaintiff's claims against Defendants Martin, Price, Jeffreys, Crain, or Wills because it complained only about Siddiqui's conduct and failed to mention any other Defendants (Doc. 75, pp. 5-7).

### *Grievance No. 154-1-21 – filed January 19, 2021*

This second grievance is the focus of the current dispute over whether Plaintiff exhausted his administrative remedies. The Court previously found that the content of this grievance was sufficient to present Plaintiff's claims against the Defendants in Counts 3 and 4. (Doc. 75, p. 7).

Plaintiff submitted Grievance No. 154-1-21 as an emergency grievance. It recited that a medical referral had been made on December 23, 2020 for Plaintiff to obtain treatment for his "persistent rash that has been ravishing [Plaintiff's] body leaving scars since early November." (Doc. 74, p. 22-23). A provider attempted treatment with anti-fungus cream but Plaintiff continued to have itching, pain, and scars over his entire body. *Id.* Further, "Jane Doe Unknown HCU Staff are denying and delaying medical treatment because of lawsuits against them." *Id.*

The emergency grievance was recorded in the prison log as received on January 20, 2021; it was deemed non-emergency and returned to Plaintiff on January 22, 2021. (Doc. 66-5, p. 8). The IDOC's Cumulative Counseling Summary does not reflect any resubmission of the grievance for regular consideration, and Defendant Price recorded a "Kite response" on February 24, 2021 informing Plaintiff that he never resubmitted Grievance No. 154-1-21 as a non-emergency. (Doc. 66-5, p. 7).

Plaintiff's Affidavit[5] affirms that he did resubmit Grievance No. 154-1-21 for regular consideration on January 24, 2021 by using the same method he employed when he sent it as an emergency grievance – he placed it in the locked box brought to his cell by an officer. (Doc. 74, pp. 34; *see also* Doc. 74, p. 5-6, 23). He believes that Price withheld or destroyed it, thus thwarting him from using the grievance process to exhaust the matter. Plaintiff notes that since 2011, he has kept a handwritten log (included with his response) to document each grievance he has filed and appealed and the outcome of each submission. (Doc. 74, pp. 1, 8-16, 34). He recorded submitting Grievance No. 154-1-21 as an emergency, and then resubmitting it to Price on January 24, 2021, but Plaintiff's log shows no response from officials. (Doc. 74, p. 14).

Plaintiff followed up on the lack of response to Grievance No. 154-1-21 by submitting a new grievance dated January 31, 2021, complaining that Price withheld/destroyed Grievance No. 154-1-21 submitted on January 24, 2021. (Doc. 74, pp. 6, 24). Plaintiff also wrote a February 14, 2021 grievance directed to "Director Jeffreys/ARB" complaining that six grievances, including No. 154-1-21, were withheld or destroyed after he submitted them. (Doc. 74, pp. 6, 25-26). That February 14, 2021 grievance was stamped as received by the ARB on February 19, 2021 and was rejected because the original grievances and responses were not attached. (Doc. 74, p. 27). Plaintiff argues this sequence of events demonstrates the grievance process was unavailable to him for exhausting Grievance No. 154-1-21.[6]

Defendants Wills, Crain, Martin, Price, and Jeffreys argue Plaintiff failed to fully exhaust

---

[5] A party may oppose summary judgment with an affidavit if it is based on personal knowledge. FED. R. CIV. P. 56(c)(4). Plaintiff's affidavit in support of summary judgment is based on his personal knowledge, and he attested to its accuracy under penalty of perjury in accordance with 28 U.S.C. § 1746. (Doc. 74, p. 35).

[6] The Court found that Plaintiff's later-submitted Grievance No. 97-12-21 did not serve to exhaust his claim that the failure to treat his medical issues amounted to a "continuing violation" because Plaintiff did not file that grievance until months after he initiated this lawsuit. (Doc. 75, p. 9).

Grievance No. 154-1-21 because the grievance records do not show that Plaintiff ever submitted it for normal grievance review after it was deemed not to be an emergency. (Doc. 66, pp. 7-8; Doc. 66-3, p. 2; Doc. 66-5, pp. 7-8).

**LEGAL STANDARDS**

*I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

*II. Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438

5

F.3d 804, 809 (7th Cir. 2006) Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

For a prisoner to properly exhaust their administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. If a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

While strict compliance with the exhaustion requirement is the rule in this Circuit, an inmate is only required to exhaust administrative remedies that are actually available to him/her. *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Wallace v. Baldwin*, 55 F.4th 535, 542-44 (7th Cir. 2022). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642; *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"); *Dole v.*

6

*Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

The United States Supreme Court has adopted a definition of "available" that means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained." *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (citing *Booth*, 532 U.S. at 738). For example, an administrative procedure is unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Ross*, 578 U.S. at 643 (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). This commonly occurs when an administrative official has apparent authority and refuses to exercise it or when a grievance handbook directs an inmate to submit his grievance to an administrative office that disclaims any capacity to consider the grievance. *Id.* The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

### III. Grievance Procedures

As an inmate in the custody of the IDOC, Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. The procedures direct an inmate to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the

subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit their findings to the Chief Administrative Officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, they can file an appeal with the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023-24.

The grievance procedures do allow for an inmate to file an emergency grievance; to do so, the inmate must send the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and direct it to be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). After such a determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f). If the CAO determines the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c).

**FACTUAL ISSUE BEFORE THE COURT AT THE EVIDENTIARY HEARING**

As set forth by the Court in the Order denying Defendants' summary judgment motion and directing them to request a *Pavey* hearing (Doc. 75, pp. 7-9), the following disputed issue relating to whether Plaintiff has exhausted his claims and whether the grievance process was available to him must be determined in an evidentiary hearing:

> **Did Plaintiff timely resubmit Grievance No. 154-1-21 for consideration as a non-emergency after it was returned to him on January 22, 2021?**

**DISCUSSION**

*I. Testimony at Evidentiary Hearing*

Defendants presented testimony from Grievance Officer Kelly Pierce regarding the procedures for grievance collection with portable locked boxes during the relevant time in 2021, how collected grievances were logged, who had access to them, and the procedure and documentation for tracking grievance receipts, reviews, responses, appeals, and other matters. The locked boxes are only unlocked in the grievance office Mondays through Fridays. The grievance officer who unlocks the box signs the log, and after that several people assist with processing the enclosed grievances. Grievance No. 154-1-21 was not reviewed under the normal procedure because it was never received back from Plaintiff after it was returned to him as a non-emergency. Defendant Counselor Heather Price is sometimes in the grievance office while grievances are being processed.

Correctional Casework Supervisor Krista Allsup testified at Plaintiff's request. She did not recall receiving any grievances from Plaintiff or other complaints during 2021 about Defendant Heather Price but she would remember complaints about Price if she had received any. She did not recall a letter or note directed to her from Plaintiff on February 23, 2021 complaining about Grievance No. 154-1-21. The Cumulative Counseling Summary ("CCS") shows a kite response

from Defendant Price dated February 24, 2021, which Allsup could have referred to Price for a response. Price was not required to log that kite response in the CCS; Allsup commented that Price went "above and beyond" by doing so. The CCS also shows a June 7, 2019 action by Allsup referring a grievance filed by Plaintiff to Internal Affairs. Plaintiff commented he has grievances from May and June 2019 in his possession to which Allsup responded, but that were not included in the CCS. Neither Allsup nor Pierce could say that it was not humanly possible for a grievance to go missing after it had been placed in the box.

Officer Kenneth Modglin testified that he was on duty on January 24 and 31, 2021 and would have collected grievances from Plaintiff in the grievance box if he asked for it on those dates.

Plaintiff testified that Defendant Price had become antagonistic toward him because he filed a number of grievances against her for failing to respond to his needs. He believes Price took the missing Grievance No. 154-1-21 sometime after he placed it in the collection box to resubmit it after it was denied emergency status. The CCS is "full of errors and omissions" because Price documented that she conducted regular "face-to-face" meetings with Plaintiff during 2021 when in fact Price never spoke to Plaintiff over a two-and-a-half year period.

Defendant Price was not available to testify.

## II. Analysis

The Court has considered Plaintiff's testimony describing the steps he took to attempt to exhaust Grievance No. 154-1-21 and finds him credible. Plaintiff's handwritten log of his grievance activity supports his account that he attempted to exhaust this grievance using the means available to him. Given his testimony that the IDOC Cumulative Counseling Summary is not entirely accurate or complete, and the admissions by Pierce and Allsup that it may be possible for

10

a grievance to be lost or misplaced despite their tracking system, the Court concludes that Defendants have not met their burden to prove their affirmative defense of failure to exhaust administrative remedies.

Plaintiff's assertion that he resubmitted Grievance No. 154-1-21 to be considered as a non-emergency complaint by placing it in the portable grievance box is similar to the circumstances in *Dole*, where the Seventh Circuit found that an inmate had done all he could to exhaust administrative remedies by placing a timely appeal to the ARB in his chuckhole to be mailed. *Dole v. Chandler*, 438 F.3d 804, 810-11 (7th Cir. 2006). In *Dole,* the inmate's mail to the ARB was apparently lost, but the Court found that the error was a misstep by the prison system, not the inmate, so the inmate could not be faulted for a failure to exhaust. In the present case, where the Court credits Plaintiff's account that he indeed resubmitted his grievance, its subsequent loss appears to be the fault of the prison system rather than an error by Plaintiff.

Accordingly, the Court finds that Plaintiff exhausted all administrative remedies that were available to him. He may proceed with his claims in Counts 3 and 4.

## DISPOSITION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Hearing (Doc. 76) is **GRANTED**; the hearing has been completed as reflected herein.

The Court concludes that Plaintiff Boclair exhausted his administrative remedies as to his claims against Defendants Crain, Jeffreys, Martin, Price, and Wills in Counts 3 and 4 (See Docs. 65, 74).

The matter of exhaustion of administrative remedies now being resolved, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's remaining claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines, and will address Plaintiff's pending motion for recruitment of

counsel (Doc. 79) in a separate order.

**IT IS SO ORDERED.**

**DATED:  May 24, 2023**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**
