## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STANLEY BOCLAIR,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-CV-00289-SPM** |
| **ANTHONY WILLS, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Angela Crain, Rob Jeffreys, Heather Price, and Anthony Wills. (Doc. 123). *Pro se* Plaintiff Stanley Boclair filed a Response. (Doc. 130). Having been fully informed of the issues presented, this Court **GRANTS** the Defendants' Motion for Summary Judgment.

### Relevant Factual And Procedural Background

*Pro se* Plaintiff Stanley Boclair is an inmate presently incarcerated at Menard Correctional Center in Menard, Illinois. (*See* Doc. 1, p. 1). Defendant Angela Crain was the Administrator of Menard's Health Care Unit; Rob Jeffreys is the Director of the Illinois Department of Corrections; Heather Price is a counselor at Menard; and Anthony Wills is the Warden at Menard. (*See* Doc. 124). The instant suit arises from the medical treatment of a rash on Boclair's body that was later determined to be eczema. (*See* Doc. 1; Doc. 124, pp. 2–7). Plaintiff Boclair alleges that he requested

treatment for the rash in question at sick call on or about October 6, 2020. (Doc. 124, p. 3 (citing Doc. 1, p. 7)). The progress notes from his sick call visit only state "dryness, Minerin jar." (*Id.*, p. 3 (citing *id.*, Ex. C, Bates 000214)). The first mention of a rash in Menard's medical records is at a subsequent sick call on November 18, 2020, at which Plaintiff Boclair states that he had the rash for two weeks. (*See id.*, p. 3 (citing *id.*, Ex. C, Bates 000225)). Plaintiff Boclair was prescribed hydrocortisone cream for his rash. (*See id.*, p. 3 (citing *id.*, Ex. B, pp. 84–85)). No mention is made of the rash in question at Boclair's sick call visits on November 24 and 30 and December 4, 5, 10, and 19, 2020. (*See id.*, pp. 3–4 (citing *id.*, Ex. C, Bates 000227–31, 000238–39, 000257, 000259, 000261–63, 000265–66)). One of these visits included a physical exam. (*See id.* (citing *id.*, Ex. C, Bates 000227–31, 000238–39, 000257, 000259, 000261–63, 000265–66)). The records from Boclair's sick call visit on December 23, 2020 indicated that he had "darkened irregular flat blemishes" for the past six weeks that had been treated with both antifungal and hydrocortisone creams. (*Id.*, p. 4 (citing *id.*, Ex. C, Bates 000267, 000419)). Boclair alleges that he told his psychiatrist, Dr. Thena Poteat, about his skin issues on January 14, 2021, which she stated might be a urinary tract fungus. (*Id.*, p. 4 (citing *id.*, Ex. B, pp. 58, 61; *id.*, Ex. C, Bates 000417, 000419); *see* Doc. 130, Ex. H). Dr. Poteat texted Defendant Crain to state that Boclair needed medical treatment.[1] (Doc. 124, p. 4 (citing Ex. B., p. 59)). Defendant Crain

---

[1] Boclair states in his Deposition that Dr. Poteat "said, sounds like a urinary tract fungus. She said you're going to have to have a certain type of treatment for that. And so she gave me some pills." Boclair Dep. 59/1–3. Boclair states that Dr. Poteat "gave a diagnosis as a medical doctor, and she texted Defendant Crain in front of me. She picked up her phone and she said I'm going to send Angela a text, Defendant Crain." *Id.* 59/6–10. While Dr. Poteat is a physician as a psychiatrist, she did not conduct a full physical exam of Plaintiff Boclair or prescribe medication—this issue is addressed *infra*.

received notice of Boclair's medical care need on January 17, 2021. (*See id.*, p. 4 (citing *id.*, Ex. D)). Boclair filed an emergency grievance on January 19, 2021 claiming "that staff in the health care unit were 'denying and delaying medical treatment because of lawsuits against them.'" (*Id.*, p. 4 (citing Doc. 1, p. 22)). Defendant Anthony Wills determined the grievance was not an emergency, returning it to Boclair on January 22, 2021. (*Id.*, p. 4 (citing Ex. C, Bates 000008, 000166)). While Boclair claims that he resubmitted this grievance (#154-1-21) via a locked grievance box brought to his cell (*See id.*, p. 5 (citing Doc. 1, p. 12; Doc. 74, pp. 5, 34)), Menard's records do not reflect this. (*See id.* (citing *id.*, Ex. C, Bates 000166)). Boclair submitted another grievance (#4-2-21) claiming that "Dr. Siddiqui had failed to address his skin condition on October 6, 2020" and alleges that he submitted an additional grievance "complaining that Defendant Price had withheld/destroyed" grievance #154-1-21. (*Id.* (citing *id.*, Ex. C, Bates 000115; Doc. 1, p. 24)). There is no record of the latter grievance. (*See id.* (citing Ex. C, Bates 000007-08, 000166)).

Boclair next spoke to his psychologist on February 1, 2021 about his skin issues; the psychologist informed Boclair two days later that Defendant Crain had been contacted. (*See id.* (citing *id.*, Ex. B, pp. 59–60, 63)). Boclair also states that he showed his rash-covered arms to Defendant Wills during a wellness tour on February 9, 2021; according to Boclair, Wills smiled and continued with his tour. (*See id.* (citing *id.*, Ex. B, pp. 54–55)). Defendant Martin, who was with Defendant Wills during the February 9 tour, directed Boclair to send her a "kite" relating to his rash; after giving the kite to Reva Engelage, Boclair did not receive a response. (*See id.*, pp. 5–6 (citing

*id.*, Ex. B, pp. 55, 57)). Boclair alleges that he next submitted a grievance to Director Jeffreys on February 14, 2021 "complaining that six grievances, including Grievance #154-1-21, had been withheld or destroyed after he submitted them." (*Id.*, p. 6 (citing Doc. 1, pp. 14, 20–21)). The Administrative Review Board ("ARB") returned the grievance on February 25, 2021 because Boclair "failed to attach the original grievances and responses." (*Id.*, p. 6 (citing *id.*, Ex. C, Bates 000122)). Boclair was seen at sick call again on February 19 and 28, 2021. (*See id.* (citing *id.*, Ex. C, Bates 000269, 000270)). At sick call on March 12, 2021, Nurse Practitioner Zimmer "noted dark scaly patches on several areas of Plaintiff's body and assessed it to be psoriasis," ordered a biopsy, and prescribed Kenalog ointment. (*See id.* (citing *id.*, Ex. B, pp. 58, 74–76, 79, 85; Ex. C, Bates 000270–71, 000403)). Although Boclair states that the ointment did not resolve the rash, the biopsy showed that the rash was eczema. (*See id.*, pp. 6–7 (citing *id.*, Ex. B, pp. 85–86; Ex. C, Bates 000325)).

Boclair was subsequently seen at sick call twice in May 2021 for his skin condition. (*See id.*, p. 7 (citing *id.*, Ex. B, p.81–82, 86; Group Ex. C, Bates 000275, 000278)). Dr. Siddiqui referred Boclair to Dermatology after sick call on July 13, 2021; this referral was approved for submission to collegial review on July 27, 2021 and approved for scheduling on November 15, 2021. (*See id.*, p. 7 (citing *id.*, Ex. C, Bates 000280–82, 000294, 000320)). Boclair was referred to an outside dermatologist on January 20, 2022; she diagnosed him with "atopic dermatitis (a form of eczema) or psoriasis" and prescribed oral steroids and prescription soap and ointment. *See id.*, p.

7 (citing *id.*, Ex. B, p. 48, 53, 82, 129; Ex. C, Bates 000297, 000299, 000303, 000323–25)).

Boclair filed the instant lawsuit on March 15, 2021. (*See* Doc. 1). In his Complaint, he alleged (1) that the Defendants retaliated against him in violation of the First Amendment because he had filed a 2018 lawsuit against them, *see Boclair v. Lashbrook*, No. 18-cv-02084-NJR (S.D. Ill. 2022); and (2) that the Defendants' failure to treat his rash for eighty (80) days (between December 23, 2020 and March 2021, *see* Doc. 130, p. 6) amounted to deliberate indifference constituting cruel and unusual punishment in violation of the Eighth Amendment. (*See* Doc. 1, pp. 15–16). Boclair filed a Motion on Estoppel by Conduct (Doc. 2) on the same day as his Complaint and subsequently filed a Motion for Preliminary Injunction (Doc. 12) on February 7, 2022; the Court denied both on February 28, 2022. (*See* Doc. 13).

This Court conducted preliminary review of Boclair's Complaint pursuant to 28 U.S.C. § 1915A on April 15, 2022 (Doc. 16). The Court reallocated Boclair's claims as follows: a First Amendment retaliation claim and Eighth Amendment deliberate indifference claim against Dr. Siddiqui for denying Boclair medical care on October 6, 2020 and a First Amendment retaliation claim and Eighth Amendment claim against Defendants Will, Crain, Martin, Price, and Jeffreys for denying Plaintiff medical care for a painful skin condition between December 23, 2020, and March 2021. (*See* Doc. 16, pp. 3–4). Dr. Siddiqui filed a Motion for Summary Judgment on July 12, 2022 (Doc. 36), which this Court granted on February 24, 2023 (Doc. 75). Additionally, the remaining Defendants filed a Suggestion of Death of Defendant

Kimberly Martin on July 24, 2023; Boclair indicated in his Deposition that he does not intend to pursue claims against Defendant Martin. (*See* Doc. 124, pp. 2–3 (citing *id.*, Ex. B, pp. 15–16, 117–19, 141)). Therefore, the only remaining claims at issue are the First Amendment retaliation claim and Eighth Amendment deliberate indifference claim against Defendants Angela Crain, Director Rob Jeffreys, Heather Price, and Warden Anthony Wills. The Defendants filed the instant Motion for Summary Judgment on May 14, 2024. (*See* Doc. 123). Plaintiff Boclair filed a Response on July 9, 2024. (*See* Doc. 130).

## APPLICABLE LAW AND LEGAL STANDARDS

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion.

*Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

This case involves a First Amendment retaliation claim and an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants. (*See* Doc. 1). While each is addressed in turn, the Court first notes that Plaintiff Boclair attempts to create genuine issues of material fact via disputing the Defendants' Undisputed Material Facts. (*See, e.g.*, Doc. 130, pp. 3–4). This includes claiming that the Defendants' misspelling of "Jeffreys" as "Jeffries" in various sections of their brief (*see* Doc. 124, pp. 10, 14) creates a genuine issue of material fact regarding the actual identity of this person. (*See* Doc. 130, p. 4). Even considering

Boclair's *pro se* status, he is an experienced litigant.[2] With this in mind, such legally deficient claims will not be entertained by the Court.

## I. First Amendment Retaliation

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter his free speech; and (3) his protected speech was at least a motivating factor for the deprivation." *Id.* (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 587 U.S. at 398 (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). More "[s]pecfically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citing *Hartman*, 547 U.S. at 260).

"To prove causation on a First Amendment retaliation claim, a plaintiff may rely on both direct and circumstantial evidence." *Lavite*, 932 F.3d at 1031 (citing

[2] Boclair has filed six other lawsuits in this District. *See Boclair v. Ill. Dep't of Corrections*, No. 10-cv-00978-SCW (S.D. Ill. 2013); *Boclair v. IDOC*, No. 20-cv-01008-MJR (S.D. Ill. 2010); *Boclair v. Lashbrook*, No. 18-cv-00586-NJR (S.D. Ill. 2020); *Boclair v. Lashbrook*, No. 18-cv-01188-RJD (S.D. Ill. 2024); *Boclair v. Lashbrook*, No. 18-cv-02084-NJR (S.D. Ill. 2022); *Boclair v. Jeffreys*, No. 21-cv-00022-SPM (S.D. Ill. 2024).

*Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012)). "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Id.* (quoting *Kidwell*, 679 F.3d at 965). "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group." *Id.* (quoting *Long v. Tchrs.' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)).

The Defendants argue that "[t]he alleged retaliatory conduct consisted of denying and delaying medical care for a rash between December 23, 2020 and March 2021" and that "[t]his claim is made despite Plaintiff having received topical medication for a rash on November 18, 2020, followed by various forms of medical attention between November 18, 2020 and December 23, 2020, and further attention to his rash in February and March 2021." (Doc. 124, p. 16 (citing *id.*, ¶¶ 9–10, 22–24; Doc. 16, p. 4)). They argue that Boclair's claim "requires accepting that each Defendant had a retaliatory motive stemming from Plaintiff's 2018 lawsuit, but that motive only extended to the treatment of Plaintiff's rash, and did not include denying him multiple topical medications or a biopsy of the rash to diagnose its nature." (*Id.*). Moreover, the Defendants argue that "Plaintiff's allegations of retaliation simply don't track with the conduct that he actually experienced" because this process "did not deviate significantly from the process of diagnosis that individuals not in custody would experience, with various medications being tried to determine which will best

treat the condition, as well as testing after the initial, standard, options fail to alleviate the problem." (*Id.*). They argue that Boclair has failed to meet either the "but-for" or "mixed-motive" standards required to prove a retaliation claim. (*See id.*, p. 17).

In his Response, Boclair argues that Defendant Crain was responsible for delays in his medical care were "because of animus brought on by the 2018 lawsuit." (Doc. 130, p. 3). Boclair stated in his deposition that Defendants Price and Wills retaliated against him because of grievances and lawsuits he filed against them, but not specifically because of the 2018 lawsuit. (*See* Doc. 124, Ex. B., p. 32–34 (citing Boclair Dep. 98, 100)). He claims that Defendants Crain and Price entered forged documents into his medical file and that this shows a retaliatory motive. (*See* Doc. 130, p. 26). While Plaintiff Boclair's Deposition seems to indicate that he is not bringing a retaliation claim against Defendants Wills or Jeffreys, the Court will assume that he intended to bring a retaliation claim against the four remaining Defendants Crain, Jeffreys, Price, Wills. (*See* Boclair Dep. 98, 100).

First, filing a lawsuit or grievance to contest prison conditions or treatment is clearly protected by the First Amendment, meaning that Boclair meets the first prong of the test. *See Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). While Boclair claims that the delay in medical treatment for his rash meets the second prong and that he has met the third prong via "a distinct body of

highly valuable circumstantial evidence," (Doc. 130, p. 2) his arguments fail to rebut the Defendants' Motion for Summary Judgment. (Doc. 123).

Here, Boclair has not provided any direct or circumstantial evidence that supports a reasonable inference of causation. First, Boclair has not demonstrated that he actually suffered a First Amendment deprivation at all. While he emphasizes the fact that the initial treatment for his eczema was unsuccessful and was allegedly delayed by the Defendants, it is standard with dermatological ailments to attempt various treatments before landing on one that is effective. (*See* Doc. 130, p. 16 ("Plaintiff's allegations of retaliation simply don't track with the conduct that he actually experienced, which did not deviate significantly from the process of diagnosis that individuals not in custody would experience, with various medications being tried to determine which will best treat the condition, as well as testing after the initial, standard, options fail to alleviate the problem."). Moreover, the medical records provided in this case indicate that Dr. Siddiqui did not provide a referral for Boclair to see dermatology until July 13, 2021 when he determined that the course of treatment had been ineffective. (*See* Doc. 124, Ex. C, p. 26). The Court also notes that Boclair refused additional hydrocortisone cream on the December 23, 2020 sick call visit. (*See* Doc. 124, p. 4 (citing *Id.*, Ex. C, Bates 000267)). He cannot claim that he was denied or delayed treatment when he refused to complete the first-line course of treatment for his eczema.

All of the documentation from Boclair's sick call visits indicate that the medical staff were continuing to prescribe treatment for Boclair's rash. (*See id.*, Ex. C). While

Boclair wished to see a physician about his rash and felt that his treatment was taking longer than he would have liked, there is no indication that treatment was either delayed or denied because of a retaliatory motive from his 2018 lawsuit. Additionally, his ability to file grievances[3] or additional lawsuits[4] was clearly not restricted in any way and he has not produced any direct or circumstantial evidence to show that any of the Defendants forged or destroyed any of the grievances that he has filed. While Boclair argues that Defendant Crain had a retaliatory motive "because of animus brought on by the 2018 lawsuit," (Doc. 130, p. 3), he has not provided any evidence of a causal link between the 2018 lawsuit and any of Crain's conduct here.

The Seventh Circuit has noted that "*argument* is insufficient to avoid summary judgment; the nonmoving party needs to come forward with *evidence*." *Beatty v. Olin Corp.*, 693 F.3d 750, 754 (7th Cir. 2012) (citing *Outlaw v. Newkirk*, 259 F.3d 833, 839 n.2 (7th Cir. 2001); *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 361 (7th Cir. 1992)). Boclair has failed to prove the second or third elements of his First Amendment retaliaton case—because Boclair has not demonstrated that there are genuine issues of material fact sufficient to submit his First Amendment retaliation claims to a jury, his First Amendment claims do not survive the Defendants' Motion for Summary Judgment.

---

[3] Boclair's Cumulative Counseling Summary indicates that Boclair's ability to file grievances has clearly not been chilled by any alleged retaliation. (*See* Doc. 124, Ex. C, pp. 1–2).

[4] Notably, Boclair filed another lawsuit in this Court just two months before he first filed the instant suit (i.e., during time period at issue in the instant case). *See Boclair v. Jeffreys*, No. 21-cv-00022-SPM (S.D. Ill. 2024).

## II. Eighth Amendment Deliberate Indifference

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner [which] constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Claims for deliberate indifference have an objective and a subjective component. *Estelle v. Gamble*, 429 U.S. 97 (1976). Boclair must establish that he suffered from an objectively and sufficiently serious medical condition. *Cesal v. Moats,* 851 F.3d 714, 721 (7th Cir. 2017). Boclair must also show that Defendants actually knew of, but disregarded, a substantial risk to the inmate's health. *Cesal,* 851 F.3d at 721. "Intentional delays in medical care may constitute deliberate indifference, even if the inmate's medical condition is non-life threatening." *Id.* at 722 (quoting *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)). "A doctor's choice of 'easier and less efficacious treatment' for an objectively serious medical condition also may be sufficient . . . [,] [b]ut 'mere disagreement with a doctor's medical judgment' is not enough to support an Eighth Amendment violation." *Id.* (first quoting *Estelle*, 429 U.S. at 104 & n.10; then quoting *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010)).

Additionally, it is well-settled that mere negligence is not enough to establish a Defendant's deliberate indifference. *See, e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). In fact, even gross negligence is insufficient. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Instead, deliberate indifference is comparable to criminal recklessness. *Thomas v. Blackard,* 2 F.4th 716 (7th Cir. 2021) (citing *King*, 680 F.3d at 1018). "'Reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood,* 836 F.3d 800, 805–06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant knew better than to make the medical decision that [he] did." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (cleaned up). A medical professional's choice of an "easier and less efficacious treatment" can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry,*

604 F.3d at 441 (quoting *Estelle*, 429 U.S. at 104 & n.10). The Seventh Circuit has "characterized the standard as imposing a high hurdle on plaintiffs because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).

The Defendants first argue that none of them were medical professionals and that they were not responsible for medical decision-making associated with Boclair's eczema. (*See* Doc. 124, pp. 9–10). Regarding Defendant Crain, they argue that her position as Health Care Unit Administrator does not put her in a supervisory role with respect to medical decisions made by individual healthcare providers. *(See id.*, p. 10). Regarding Defendants Jeffreys, Price, and Wills, the Defendants argue that "their roles at Menard and the IDOC did not involve the provision of medical care. (*See id*.). The Defendants argue that, because the doctrine of respondeat superior cannot be applied in § 1983 lawsuits, the Defendants did not have sufficient personal involvement to be liable under § 1983. (*See id.*, pp. 9–10 (citing *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982); *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Burks v. Raemisch*, 555 F.3d 592, 594–95 (7th Cir. 2009); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007))).

The Defendants next argue that Boclair has failed to meet his burden to prove that he had a serious medical need. (*See* Doc. 124, pp. 11–13). They indicate that Boclair "testified during his deposition that no medical professional had informed him

that any delay in treating his rash had caused him physical harm" and that he "has neither pleaded, nor do the medical records indicate, that Plaintiff had other symptoms which, together with the rash, would suggest a serious illness." (*Id.*, p. 13). They point to caselaw from other courts indicating that eczema is not a serious medical condition. (*See id.* (citing *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009); *Tsakonas v. Cicchi*, 308 F. Appx. 628, 632 (3d Cir. 2009); *Williams v. Coleman*, No. 1:23-cv-646, 2023 U.S. Dist. LEXIS 132379, at *9 (W.D. Mich. Jul. 31, 2023); *Schmidt v. Bowens*, No. 19-cv-1826-JPS, 2020 U.S. Dist. LEXIS 210044, at *7 (E.D. Wis. Nov. 10, 2020))). The Defendants also argue that they were neither aware of a serious risk of harm to Boclair nor did they disregard one; they argue that each relied on the judgment of medical professionals who did not indicate that Boclair's rash was a serious risk to his health. (*See id.*, pp. 13–14).

In his Response, Boclair argues that "[a]ll defendants held positions of non-medical defendants who when informed, in this case by a physician of plaintiffs [sic] serious medical condition as it pertains to defendant Crain, ignored it completely, did not investigate nor defer to the prison medical provider." (Doc. 130, p. 18). He further argues that Defendants Wills and Price withheld or destroyed "the information reporting the medical need" and that "Jeffreys had knowledge and reason to actually believe that prison doctors or healthcare unit (HCU) staff were mistreating or not treating plaintiff." (*Id.*). Regarding Defendant Crain, Boclair argues that she did not obtain a referral for him to see a specialist until after his psychiatrist texted her. (*See id.*, p. 19). He argues that Crain intentionally withheld and delayed treatment for

him "after the medical furlough clerk made and set a date for appointment [sic] with a specialist." (*Id.*, p. 21 (citing *id.*, Exs. B, D; *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997))). Regarding Defendant Wills, Boclair refers to an incident where he showed his rash-covered arms to Wills during a health and safety inspection. (*See id.*, p. 22). Boclair argues that his submitted grievance 154-1-21 informed Defendants Price and Jeffreys of his condition. (*See id.*, pp. 22–23).

Regarding his eczema, Boclair argues that "[a] serious medical condition need not be life-threating to be serious . . . [r]ather, a serious medical condition is one that significantly affects the individuals [sic] daily activities, or causes chronic and substantial pain." (*Id.*, p. 14 (citing *Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008)). Boclair argues that his eczema, manifested as painful rashes and scabs, is sufficiently serious such that it meets both elements outlined in *Gutierrez*: "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." 111 F.3d at 1373 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977)); (*see* Doc. 130, p. 25 (quoting *Gutierrez* at 1373)). Boclair also points to *Estelle*, in which the "Supreme Court never questioned that on inmates [sic] painful back injury suffered while unloaded a truck was a serious medical matter." (Doc. 130, p. 25 (citing *Estelle* at 107)).

The first question before the Court is whether Boclair's eczema qualified as a "serious" medical condition. Boclair is correct that "the Supreme Court contemplated that medical conditions far less critical than 'life-threatening' would be encompassed

by the term." *Gutierrez* at 1370. "Indeed, the inmate in *Estelle* based his medical care claim 'solely on the lack of diagnosis and inadequate treatment of his back injury,' which had been diagnosed by prison doctors as a lower back strain and treated with muscle relaxants and pain medication." *Id.* at 1370–71 (quoting *Estelle* at 107). The Seventh Circuit concluded in *Gutierrez* that an infected pilonidal cyst was a sufficiently "serious" medical need, like the back injury in *Estelle*; injuries from an assault by prison guards in *Cooper v. Casey*, 97 F.3d 914, 917–18 (7th Cir. 1996); and psychological treatment in *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). *See Gutierrez* at 1371–72. However, the Seventh Circuit put common colds, toes with removed toenails, and mild asthma as being outside the ambit of "serious" medical needs. *See id.* at 1372 (citing *Gibson v. McEvers*, 631 F.2d 95 (7th Cir. 1980); *Snipes v. DeTella*, 95 F.3d 586, 591 n.1 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997); *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996)).

With all of the above in mind, the Seventh Circuit noted that "[i]t is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage." *Id.* at 1372. Notably, *Gutierrez* involved a suit dismissed at the pleadings, not a case at the point of summary judgment as in the instant case. While Boclair is correct that the Seventh Circuit has not addressed the issue of whether eczema is a serious medical condition (*see* Doc. 130, p. 25), this Court has previously determined that a painful rash that required "multiple creams, steroids, and antihistamines" was "objectively serious."

*Parada v. Wexford Health Sources, Inc.*, No. 19-CV-00056-SPM, 2023 WL 3918957, at \*4 (S.D. Ill. June 9, 2023). That being said, Boclair states in his deposition that "he applied some ointment to [his rash] and it would go away for five days, four days, whatever, it might go away for a little bit longer than that" and that he "don't think I had any [rashes] on my body that were bigger than a thumb nail." Boclair Dep. 84/7–10, 12–13. This is the only time he mentions the rash disappearing and reappearing, which means that the treatments he was prescribed seemed to be effective (at least, at some point) at combating his eczema. Based on the factual record indicating that Boclair's course of treatment for his eczema included various creams including hydrocortisone and antifungals along with special soaps, the Court holds that Boclair's eczema was a sufficiently serious medical need in line with the first prong of the deliberate indifference standard. *See Cesal,* 851 F.3d at 721.

We then move to the question of whether each of the named Defendants were deliberately indifferent to Boclair's rash. In *Cesal*, the Seventh Circuit found that a prison physician was not deliberately indifferent to an inmate's back injury because there was not "any reason in this record to think that starting with the physician assistant and nurse was not a reasonable step." *Id.* at 723. While Boclair argues that there were significant delays in his treatment, the Seventh Circuit has stated that "[o]ne thing which has long been clear in our Eighth Amendment cases is that the amendment is not coterminous with a medical malpractice claim." *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997) (citing *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996); *Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586 (7th

Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997)). Additionally, prisoners are "not entitled to the best care possible" but rather "to reasonable measures to meet a substantial risk of serious harm to her." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). When a prisoner sought "specific treatment and foolproof protection from infection," the Seventh Circuit stated that "[t]he Eight Amendment does not provide her with either." *Forbes*, 112 F.3d at 266.

Boclair does not dispute the fact that none of the named Defendants are medical professionals. (*See* Doc. 124, pp. 2–3; Doc. 120, pp. 3–5). The Seventh Circuit has stated that "[w]e have long recognized that the division of labor within a prison necessitates that non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 50 (Mem.). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 1049–50 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). The Seventh Circuit has repeatedly affirmed district courts' grant of summary judgment "for non-medical prison officials who relied on the professional judgment of prison medical staff." *Id.* at 1050 (citing *Hayes v. Snyder*, 546 F.3d 516, 527–28 (7th Cir. 2008)). In both *Giles* and in *Haynes*,

the Seventh Circuit determined that such officials "'were entitled to rely on the professional judgment of medical prison officials'" and "'nothing in [the medical] reports made it obvious that [the inmate] might not be receiving adequate care.'" *Id.* (citing *Hayes* at 527–28). Notably, Giles "was receiving regular medical attention from psychologists, psychiatrists, and mental health professionals," had emergency appeals that "were reviewed by the ARB, which found his complaints to be without merit upon investigation," and did not "present[] evidence that his grievances were ignored or mishandled." *Id.*

The instant case is analogous to both *Giles* and to *Haynes*. Boclair alleges that he first went to sick call for his rash on October 6, 2020 and was provided with lotion. (*See* Doc. 124, p. 3 (citing Doc. 1, p. 7)). He states that he only had the rash for two weeks at sick call on November 18, 2020 and was prescribed hydrocortisone for it. (*See id.*, p. 3 (citing *id.*, Ex. C, Bates 000225; *id.*, Ex. B, pp. 84–85)). Additionally, none of the sick call records provided in this case indicate that any of Boclair's *medical providers* requested a physician referral that was denied or delayed. (*See* Doc. 124, Ex. C). The sick call documentation from December 23, 2020 specifically states "none" in the "MD Referral" box, contrary to what Boclair claims in his Affidavit. (Doc. 124, Ex. C, p. 20, Bates 000267; Doc. 130, Ex. A, p. 3). While the sick call documentation from February 19, 2021 states that Boclair requested to speak with a physician, a referral to a physician was not noted. (Doc. 124, Ex. C, p. 21, Bates 000269). Additionally, the sick call documentation from March 12, 2021 states that Boclair was to use Kenalog ointment for 3 months for his rash. (*See id.*, Ex. C, p. 22, Bates

000270). The May 9, 2021 sick call documentation indicates that Boclair claims that he has had the rash "since last September" and that he has been using cream "for 2–3 months." (*See id.*, Ex. C, p. 22, Bates 000275). Dr. Siddiqui's note from July 13, 2024 indicates that Boclair should be referred to dermatology. (*See id.*, Ex. C, p. 26, Bates 000280). The documentation submitted indicates that Boclair's referral was to be submitted "for upcoming collegial" on July 16, 2021 and that "Dr. Ritz has reviewed the collegial and has approved the request" on July 27, 2021. (*See id.*, Ex. C, pp. 27–28, Bates 000281–82). The next document from November 15, 2021 indicates that med furlough notification needed to be approved "for Angela Crain approval/signature." (*See id.*, Ex. C, p. 29, Bates 00294). Boclair was seen by a dermatologist on January 20, 2022. (*See id.*, Ex. C, p. 35, Bates 000324).

While Boclair argues that Defendants stood back while prison healthcare providers "were mistreating or not treating" him, the factual record shows that Boclair was seen at sick call multiple times and was prescribed various treatments for his skin rashes from October 2020 to March 2021. (*See* Doc. 124, Ex. C; Doc. 130, p. 18). It is well-established that various dermatologic issues may require multiple rounds of treatment or a variety of treatments before resolving; even so, Boclair refused hydrocortisone cream (the front-line treatment for various skin conditions) at his December 23, 2020 sick call visit. (*See* Doc. 124, p. 4 (citing *Id.*, Ex. C, Bates 000267)).

As stated above, a prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112

F.3d 262, 267 (7th Cir. 1997). This standard was met here. Regardless of Boclair's assertions of deliberate indifference, it was reasonable for each of the non-physician defendants to rely upon the treatment provided by prison medical officials, who continued to prescribe various treatments for Boclair's rash including creams, lotions, and soaps from October 2020 to July 2021,[5] including both before and after the biopsy ordered on March 12, 2021 indicated that his rash was eczema. (*See* Doc. 124, Ex. B, pp. 75–76, 79, 85–86; *id.*, Ex. C, Bates 000270–71, 000325, 000403).

Additionally, none of the named Defendants were deliberately indifferent to Boclair's eczema. Regarding Defendant Crain, as Boclair and the Defendants agree, Crain is not a physician and was not responsible for the diagnosis and treatment of Boclair's rash. Boclair argues that the "diagnosis" from his psychiatrist (Dr. Poteat) shows that he was getting improper care. There are a few issues with this argument, specifically. First, Dr. Poteat (while a physician) is not an internal medicine, family medicine, or primary care physician. Second, she is not Boclair's treating physician for his physical care, only for psychiatric care; she does not have a physician-patient therapeutic relationship with him regarding his *skin condition*. Third, the Court assumes that she did not perform a full physical exam of Boclair's genitals before stating that he might have a "urinary tract fungus"—Boclair states in his Affidavit that she "looked at his arms, hands, and legs as I rolled up the pant leg." (Doc. 130, Ex. A, p. 3). To that end, Boclair's citation to her progress notes shows that her

---

[5] Documents were not provided with either the Defendants' Motion nor Boclair's Response listing treatment at sick call between July 2021 and January 2022. Boclair does not provide any argument about his treatment during this time.

"diagnosis" was not conclusive. (*See* Doc. 130, p. 7; *see also* Doc. 124, p. 4). Fourth, the biopsy of Boclair's lesions showed that Dr. Poteat's "diagnosis" indicated that his rash on his arms and legs was not fungal in nature and was atopic dermatitis or psoriasis.[6] (Doc. 124, p. 7). Boclair claims that the critical period of time was from December 23, 2020 to March 2021 in his claim that Crain delayed his referral to a physician. (Doc. 130, p. 7). However, while it would appear that Crain must approve and sign off on individual referrals (*see* Doc. 124, Ex. C, p. 29, Bates 00294), she does not have any medical decision-making ability on whether a treating physician requests an outside referral or not. (*See* Doc. 130, p. 43).

While Boclair argues that Warden Wills was deliberately indifferent to his rash after Boclair showed him his rash-covered arms during a walkthrough on February 9, 2021 (Doc. 130, p. 8), Boclair admits that Director of Nursing Kimberly Martin immediately spoke to him and told Boclair to submit a kite. (*Id.*). Thus, while Wills did not *personally* tell Boclair that he would address his issue, Martin (as a member of Wills's staff) promptly addressed it. Thus, Boclair cannot claim that Wills was deliberately indifferent to his eczema and that he took no action in response to it when he relied upon the medical judgment of Boclair's treating providers. The same is true for Defendants Price and Jeffreys, who Boclair alleges were aware of his medical issues because of the grievances he filed, including those that he alleges were

---

[6] Boclair states in an Affidavit submitted with his Response that the rash on his genitals was "later confirmed by a urologist." (Doc. 130, Ex. A, p. 1). With this in mind, it appears that Boclair was afflicted with two separate conditions—the eczema on his arms and legs and the *separate* urinary tract fungus affecting his genitals. (*See* Doc. 1, pp. 14–16). The instant lawsuit focuses on his eczema, but also conflates the two conditions at various points.

destroyed. (*See* Doc. 124, pp. 4–6 (citing Doc. 1, p. 12; Doc. 74, pp. 5, 34; Doc. 124, Doc. 124, Ex. C, Bates 000166; Doc. 124, Ex. B, pp. 54–55, 57)). The Court notes that the grievance that Boclair submitted to Director Jeffreys on February 14, 2021 was returned to Boclair by the ARB for failure to follow the appropriate emergency grievance procedures. (*See* Doc. 124, p. 6). Although the named Defendants were aware of Boclair's rash, they were "able to relegate to the prison's medical staff the provision of good medical care." *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011) (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). Like in *Arnett*, this "is not a case where [the plaintiff] was being completely ignored by medical staff." *Id.* Instead, Boclair was frequently treated with soap, lotions, and creams that did have an ameliorative effect on his rash. *See* Boclair Dep. 84/7–10, 12–13.

This does not, however, explain the six-month delay between July 2021 when Dr. Siddiqui put in a referral for Boclair and January 2022 when Boclair was seen by a dermatologist. While, clearly, Defendants Wills and Price were aware of Boclair's rash, it is unclear if they were aware of the dermatology referral issued in July 2021. The same is true for Defendant Jeffries. Defendant Crain was clearly aware of the referral to dermatology based on the forms submitted to her for approval (*see* Doc. 124, Ex. C, p. 29, Bates 00294), but the Defendants insist that she did not "have decision-making authority regarding medical referrals for individuals in custody." (*Id.*, p. 13). Other circuits have held that "[a] prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Roberts v. Spalding*,

783 F.2d 867, 870 (9th Cir. 1986). Boclair does not challenge the delay between July and November 2021 but, rather, the delay between November 15, 2021 (when his referral was approved) and January 20, 2022 (when he was seen by an outside dermatologist). (*See* Doc. 130, p. 3; *see* Doc. 124, Ex. C, pp. 28–29, Bates 000282–83).

Regarding the timeline, Dr. Siddiqui put in a dermatology referral for Boclair on July 13, 2021. (*See* Doc. 124, Ex. C, p. 26, Bates 000280). The Medical Furlough Clerk indicates on July 16 that a collegial referral was received with plans to submit it for an "upcoming collegial." (*Id.*, Ex. C, p. 27, Bates 000281). The collegial referral was submitted on July 27, 2021. (*See id.*, Ex. C, p. 28, Bates 000282). Boclair was then scheduled on November 15, 2021 for a dermatology evaluation, which was conducted on January 20, 2022. (*See id.*, Ex. C, pp. 29–30, Bates 000294, 000297). While Boclair argues that the delay[7] from November 15 to January 20 was deliberate indifference on the part of Crain, she asserts that she "did not have or exercise decision-making authority regarding medical referrals of Plaintiff or any other individuals in custody." (Doc. 124, p. 10). Therefore, there is no evidence that any of the named Defendants delayed Boclair's specialist appointment.

In conclusion, while Boclair has adequately argued that his eczema was a "serious" medical condition requiring treatment, Seventh Circuit precedent indicates that the Defendants were entitled to rely upon the medical judgment of Boclair's medical treatment team; put another way, they not disregard a substantial risk to Boclair's health. *Cesal,* 851 F.3d at 721. Moreover, there is no evidence that any of

---

[7] While Boclair claims that this was a delay of 53 days, it was, in actuality, a 66-day delay. (*See* Doc. 130, p. 3).

the Defendants exhibited deliberate indifference to the point of criminal recklessness sufficient to provide them with the scienter required for a deliberate indifference claim, especially as none of the Defendants are medical professionals and, based on the submitted documentation and on Boclair's Deposition, the prescribed treatment was efficacious at least some of the time. *See* Boclair Dep. 84/7–10, 12–13; (*see* Doc. 124, Ex. C).

### III. Qualified Immunity

While the Court need not assess the Defendants' qualified immunity argument by virtue of the fact that Boclair's First and Eighth Amendment claims do not survive the Defendants' Motion for Summary Judgment (Doc. 123), the Court will briefly discuss the applicability of qualified immunity to the instant facts. In the alternative to their arguments against each of Boclair's claims, the Defendants argue that they are entitled to qualified immunity because "government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Doc. 124, p. 17 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). They argue that "the facts alleged here do not give rise to a Constitutional violation" and that "Defendants could not have known that they might be liable for either deliberate indifference or retaliation when they did not actually participate in any aspect of Plaintiff's medical care." (*Id.*, pp. 18–19). Boclair argues that they are not entitled to qualified immunity because he argues that the

Defendants engaged in First Amendment retaliation and Eighth Amendment deliberate indifference toward him. (*See* Doc. 130, pp. 27–29).

"Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (citing *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001)). "To overcome qualified immunity, the facts viewed in the light most favorable to [the plaintiff] must 'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)).

Recall that "[t]o prevail on a First Amendment retaliation claim, a plaintiff must establish three elements": (1) "he must show he engaged in protected First Amendment activity," (2) "he must show an adverse action was taken against him," and (3) "he must show his protected conduct was at least a motivating factor of the adverse action." *Id.* at 878 (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). As discussed *supra*, Boclair has failed to meet the second prong of this test because he has not shown that his 2018 lawsuit or the various grievances he filed caused any of the Defendants to delay or prevent care for his eczema. He has also failed to establish causation in line with the third prong of the test. Therefore, he has not shown that the Defendants violated a constitutional right and the Defendants would thus be entitled to qualified immunity as related to his First Amendment claim.

Regarding his Eighth Amendment claim, the Seventh Circuit has established that "[w]hen considering deliberate-indifference claims challenging the medical judgment of prison healthcare personnel, qualified-immunity analysis requires us to frame the legal question with reasonable specificity." *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019). In *Campbell*, the Seventh Circuit determined that "[t]he proper inquiry is whether then-existing caselaw clearly established a constitutional right to gender-dysphoria treatment beyond hormone therapy" not "that 'denying effective treatment' for Campbell's medical condition violates the Eighth Amendment" because the latter "formulation—which is basically a highly conceptualized version of the deliberate-indifference standard—is far too general." *Id.* at 546. Additionally, "'[f]or purposes of qualified immunity, [the Eighth-Amendment] duty' to treat prisoners' serious medical conditions 'need not be litigated and then established disease by disease or injury by injury.'" *Id.* at 548 (quoting *Est. of Clark*, 865 F.3d at 553). Moreover, "[w]hen prison officials utterly fail to provide care for a serious medical condition, the constitutional violation is obvious and qualified immunity offers little protection." *Id.* (citing *Orlowski v. Milwaukee County*, 872 F.3d 417, 422 (7th Cir. 2017)).

Here, Boclair cannot argue that his eczema was not treated at all, which is clearly not the case. His argument, then, is that prison officials persisted in eczema treatment that was ineffective. *See id.* at 547 (quoting *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (citing *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016), *as amended* (Aug. 25, 2016)). This argument also fails because it has clearly been

established that the Defedants treated Boclair's eczema. Like in *Campbell*, there is no Circuit precedent indicating that the course of care for his eczema violated a constitutional right, meaning the Defendants were not on notice of a constitutional violation and would be entitled to qualified immunity if the Court reached that question.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants Angela Crain, Rob Jeffreys, Heather Price, and Warden Anthony Wills's Motion for Summary Judgment. (Doc. 123). This case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: August 6, 2024**

> **/s/ Stephen P. McGlynn**
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**